**Dorothy GARCIA, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 95–1029SC.

United States District Court, W.D. New York.

Dec. 4, 1996.

Alan B. Block, for Plaintiff.

Jane B. Wolfe, New York, NY, for Defendant.

## Order & Decision

SCOTT, Untied States Magistrate Judge.

On November 14, 1996, this Court issued a Report & Recommendation recommending that this matter be remanded back to the Commissioner for further proceedings. On November 18, 1996, an order of reference was issued by the Hon. Richard J. Arcara transferring dispositive authority over this matter, upon the consent of the parties, to the Magistrate Judge.

Based on the above, this Court's November 14, 1996 Report & Recommendation is hereby deemed to be a Decision & Order, and the relief recommended therein is hereby so ordered as if fully set forth herein.

This Order shall constitute a final order from which an appeal, if any, may be taken.

## Report and Recommendation

SCOTT, United States Magistrate Judge.

### Introduction

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and Supplemental Security Income benefits.

Upon a review of the record, this Court finds that the Commissioner's decision is not

supported by substantial evidence and accordingly recommends that the matter be remanded to the Commissioner for further proceedings.

### Procedural Background

Plaintiff filed an application for disability insurance benefits on March 24, 1993 with a protective filing date of March 24, 1993. (R. 78–81.) [1] Plaintiff's applications were denied initially and on reconsideration. (R. 82–85, 98–101.) Plaintiff then requested a hearing.

On October 13, 1994, plaintiff appeared pro se before an Administrative Law Judge ("ALJ"), who considered the case *de novo* and concluded, in a written decision dated November 22, 1994, that plaintiff was not disabled within the meaning of the Social Security Act. (R. 16–25.) The ALJ's decision became the final decision of the Commissioner on October 1994, when the Appeals Council denied plaintiff's request for review. (R. 3–4.) Thereafter, the plaintiff commenced the instant action.

The Commissioner now moves, and plaintiff cross-moves, for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(f).

### Factual Background

The plaintiff is a 43 year-old somewhat obese woman with an eighth grade education and no employment history. She asserts that she has been disabled due to impairments in her left knee and her back since January 1, 1990. (R. 78). Hospital records reflect that the plaintiff developed left knee pain and swelling as a result of a slip and fall around 1990. (R. 141, 145). A September 11, 1992 MRI of the plaintiff's left knee revealed a lateral meniscus tear. (R. 142, 144). Arthroscopic surgery was performed on November 6, 1992. Hospital records reflect that the plaintiff tolerated the procedure well and was discharged the same day. (R. 126–32). The record reflects that the plaintiff continues to suffer from knee pain. (R. 147, 156, 181)

The record reflects that the plaintiff also suffers from degenerative disc disease. Studies of the plaintiff's spine reveal various bulges at L4–5 and L3–4 with mild retrolisth-

esis (R. 172) and a bulge at C5–6 which does not compress the spinal cord or exiting nerve roots. (R. 9) The plaintiff's spinal canal is "of good caliber throughout" with no abnormalities in the craniocervical or thoracic spine noted. (R. 9) Dr. Gregory Bennett, a neurologist, examined the plaintiff on February 28, 1994 and recommended a course of physical therapy (for 16 weeks) and suggested that she be re-examined in 12 months for re-evaluation. (R. 171). The record reflects that physical therapy was partially successful (R. 177) and that the plaintiff reported a significant decrease in back pain (R. 178).

However, physical therapy was not successful in abating the plaintiff's knee pain. The record reflects that this may have been due in part to the plaintiff's non-compliance with therapy. A physical therapy report dated September 15, 1994 reflects that the plaintiff refused to submit to therapy and strengthening activities due to knee pain and that the plaintiff was "canceling due to transportation problems and increased knee pain." (R. 181) That same report threatened to discharge the plaintiff from the therapy program if she remained non-compliant. (R. 181)

Absent from the record is a clear statement from Dr. Carl Grant, the plaintiff's treating physician, as to her disability status. The record includes a November 19, 1992 assessment from Dr. Grant in which he indicates that she is both "employable with restrictions" and "totally and permanently disabled."(R. 133) Attempts to obtain further information and a residual functional capacity assessment from Dr. Grant (R. 31) apparently failed.

The only residual functional capacity evaluation in the record was prepared by Dr. Dean Orman, a consulting physician. Dr. Orman found that while the plaintiff's ability to lift and carry items of more than 10 pounds and her ability to stand were affected by her knee impairment, her ability to sit is not affected by any impairment. (R. 147). Dr. Orman also found that the plaintiff could stoop and crouch "frequently" and climb, balance, kneel and crawl "occasionally." (R. 148) Dr. Orman stated that the plaintiff's

---

**1.** References noted as "(R.__)" are to the certi- fied record of the administrative proceedings.

ability to reach, handle, feel, see, hear or speak were unaffected by any impairment, but that she could not use her knee to push or pull. (R. 148) Finally, Dr. Orman stated that the plaintiff's knee pain would prevent her from working at heights or operation of moving machinery, but would not present environmental restrictions to temperature extremes, chemicals, dust, fumes, humidity or vibrations. (R. 148)

### Discussion

The only issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

█ Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.*; See also *Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

█ In order to determine whether plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry,* 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992). However, it should be noted that in the ALJ has an affirmative duty to fully develop the record. *Gold v. Secretary,* 463 F.2d 38, 43 (2d Cir.1972).

█ In the instant case, the ALJ found that although plaintiff suffers from severe obesity, left knee problems and degenerative disc disease, the plaintiff failed to demonstrate that she is incapable of performing at least "sedentary" work. (R. 23).

The plaintiff argues that the matter should be remanded for further proceedings to allow the ALJ to make specific findings addressing the plaintiff's limitations due to pain, and the vocational impact of the plaintiff's use of a cane. The plaintiff also seeks a direction that the ALJ take steps to enforce a subpoena issued by the ALJ to obtain a copy of the May 1994 MRI.

The record does reflect that some of the conclusions stated by the ALJ in discounting the plaintiff's subjective complaints of pain are not supported in the record. For exam-

ple, the first reason set forth by the ALJ in support of his decision not to credit the plaintiff's testimony regarding pain was that the plaintiff testified that her husband performed "much if not most of the housework" but that she later testified that he is "totally and permanently disabled." (R. 21) The record does not reflect the basis of the plaintiff's husband's disability. It is possible that the plaintiff's husband's disability would not interfere with his ability to perform housework.

In addition, the ALJ makes a specific finding that the plaintiff suffers from severe obesity. (R. 23). This condition is supported throughout the record and was noted as the secondary diagnosis on the Disability Determination and Transmittal form created by the defendant in connection with the processing of the plaintiff's claim. (R. 88) Indeed, the record reflects that the plaintiff's size has interfered with or limited her doctors ability to perform certain medical testing. (R. 143) The ALJ did not make any specific findings as to whether the plaintiff's obesity met the Appendix I listings. Nor did the ALJ obtain testimony from a vocational expert as to the existence of non-exertional limitations due to the plaintiff's obesity, if any, which may impact the plaintiff's ability to perform the range of work which the ALJ determined the plaintiff could perform. The plaintiff argues, and the Court agrees, that the ALJ should also engage a vocational expert to testify as to the vocational impact, if any, of the plaintiff's need to use a cane. Because the ALJ failed to fully address the impact of the plaintiff's obesity, remand of this matter for further findings is appropriate.

Although the plaintiff was represented by a paralegal at the administrative hearing, she was not represented by counsel as is erroneously stated in the record. .(R. 46) The Second Circuit has held that notwithstanding such representation by counsel or by a paralegal, the ALJ retains the obligation to fully develop the record. *Pratts v. Chater,* 94 F.3d 34 (2d Cir.1996). Although the plaintiff did not affirmatively argue for a disability finding based upon her obesity, in the face of the evidence in the record, and the ALJ's

own findings, the ALJ had an obligation to develop the record further to determine whether the plaintiff's obesity impacted on her vocational capacity.

 Under the facts and circumstances of this case, including but not limited to the fact that a December 1994 MRI report was subsequently submitted to the Appeals Council and incorporated in the record, the Court declines to find that the plaintiff's due process rights were violated by the ALJ's failure to enforce his subpoena to obtain the May 1994 MRI report. Although an ALJ's failure to properly develop the record may amount to a denial of an applicant's due process rights, it is not certain that the ALJ's duty includes the initiation of legal proceedings to enforce *every* subpoena he issues. The plaintiff has not articulated a factual argument of what the May 1994 MRI was to show, how it might have impacted upon the plaintiff's claim, or why the subsequent MRI of December 1994 was not sufficient. This is not to discourage the ALJ upon remand to make further attempts to develop this record, or to suggest that such is not within his duty, particularly if the plaintiff articulates a specific need for the information with respect to her claim.

### Conclusion

For the foregoing reasons, this Court recommends that this matter be REMANDED to the Commissioner for further proceedings including (1) a re-assessment of any limitations based upon the plaintiff's allegations of pain; and (2) specific findings regarding whether the plaintiff's obesity impacts her vocational capacity.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten(10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and W.D.N.Y. Local Rule 72(a)(3). *Failure to file objections to this*

*report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72(a)(3)may result in the District Court's refusal to consider the objection.*

So ordered.

Nov. 8, 1996.